UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IRVING MATERIALS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:03-cv-361-SEB-TAB |
| ) | |
| THE OHIO CASUALTY INSURANCE ) | |
| COMPANY, AMERICAN NATIONAL ) | |
| FIRE INSURANCE COMPANY, et al., ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFF'S MOTIONS TO RECONSIDER**[1]

This cause is back before the Court on Plaintiff's Motions to Reconsider [Docket Nos. 558 & 560], filed on April 30, 2007.[2] On March 30, 2007, we entered an Order Denying Plaintiff's Motion for Summary Judgment [Docket No. 555] in the above-captioned cause, ruling, *inter alia*, that: (1) each contract between IMI and a third party requiring IMI to deliver a specific formulation of concrete is to be deemed an occurrence under the insurance contract, thereby resulting in multiple occurrences;[3] and (2) the "joint

---

[1] For a detailed recitation of the facts of this matter, refer to our order of March 30, 2007 [Docket No. 555].

[2] Plaintiff also filed a Motion for Leave to File Additional Evidence in Support of Motions to Reconsider [Docket No. 616]. However, because we are able to rule based upon the body of evidence already in the record, we DENY Plaintiff's Motion for Leave to File Additional Evidence as moot.

[3] To be as clear as possible, in our March 30, 2007, entry, we did not hold that each *pour* of concrete constitutes a separate occurrence. Instead, we held that each *contract* requiring IMI to deliver a specific formulation of concrete to a particular third-party purchaser constitutes a

(continued...)

and several" or "all sums" method is not the proper method of allocation.  Plaintiff, Irving Materials, Inc. ("IMI"), requests that we reconsider our analysis and findings relating to those two aspects of that ruling, relating, first, to the number of occurrences at issue and, second, to the proper method of allocation applicable in this case.  We have combined our consideration of Plaintiff's two motions in that they pertain to the same entry.  Because, upon review, we find no manifest error of law or fact in our previous entry, we DENY Plaintiff's motions.

## Discussion

**I.     Number of Occurrences**

IMI first contends that we should reconsider our determination that there were multiple occurrences in this case because Ohio Casualty concealed its true position on the number of occurrences question, representing to its reinsurers that a single occurrence had taken place while arguing before the Court that multiple occurrences were at issue.  IMI claims that Ohio Casualty has concealed evidence of its true position on the issue of occurrences and misrepresented its position to this Court, which IMI believes should be considered either an admission, estoppel, or bad faith.  Pl.'s Br. at 2.  IMI contends that in

---

[3](...continued)
separate occurrence.  Thus, we concluded that multiple occurrences are at issue here because IMI made many independent contracts to deliver different batches of concrete.  However, after delivery, if multiple pours were made at the job site from the same batch of concrete, each pour does not then constitute a new occurrence as each batch of concrete was delivered based upon the terms of one contract.

light of this alleged behavior we should reconsider our decision because "the law does not allow Ohio Casualty to maintain a 'litigation position' before the Court and a 'real' position to the rest of the world." Id.

We begin by noting that we are not convinced that the evidence cited by IMI actually supports the contention that Ohio Casualty internally held a position on the number of occurrences that is contradictory to that which it has represented to the Court throughout this litigation.  However, even if true, it would not necessitate reconsideration of our prior ruling.  In support of this argument, IMI relies upon Gooch v. State Farm Mutual Automobile Insurance Co., 712 N.E.2d 38 (Ind. App. 1999).[4]  This case, however, provides no assistance to IMI.  In Gooch, the defendant insurer had been presented with evidence that showed its position was untenable.  In the face of compelling evidence otherwise, it fabricated a legal position to present to the court that it knew was not supported by the facts and law, simply to force the plaintiff to settle, prompting the Indiana Court of Appeals to rule that, "[i]f, indeed, this position was made in bad-faith, we are unwilling to allow [defendant] to escape liability because its bad-faith attempt to

---

[4] In Gooch, the Indiana Court of Appeals reversed a trial court's grant of summary judgment to an insurer on a bad faith claim because a question of fact existed as to whether the insurer intentionally failed to conduct a more extensive investigation of its insured's accident with a hit-and-run driver. The identity of the hit-and-run driver was a decisive issue in the case and the insurance company claimed that it had proof of the driver's identity – a police trace of the license plate. On that basis, the insurer informed the insured that she would have to file the claim in another state. However, in opposing the summary judgment, the insured presented evidence that her attorney had provided the insurance company with compelling evidence that the insurance company had identified the wrong individual as the driver. Although faced with this evidence, the insurer failed to investigate further in order to maintain its litigation position and attempt to force the insured to settle the claim.

enforce a provision of [plaintiff's] insurance policy was a 'litigation position.'" Id. at 43.

The circumstances in Gooch are not at all analogous to the situation here. In the case at bay, whether Ohio Casualty maintains both a "litigation position" and a "real position" on the issue of number occurrences is irrelevant because, unlike the defendant's position in Gooch, Ohio Casualty's position is not patently true or false, nor is it determinative of the issue. Determining what constitutes an occurrence, based upon the primary insurance contracts and applicable caselaw, is an issue entrusted to the Court for resolution. As Defendants correctly assert, "Ohio Casualty's assessment of whether there was one occurrence or multiple occurrences is not operatively-determinative of the number of coverage-triggering occurrences under the primary liability insurance contracts issued by Zurich." Defs.' Resp. at 16. Thus, the possibility that Ohio Casualty may in some other context have held the position that only one occurrence was at issue does not necessitate reconsideration by the Court of its previous ruling.

IMI also claims that we should reconsider our determination that multiple occurrences took place because: (1) one case we "relied upon heavily" in our decision was submitted by Ohio Casualty nine days prior to our ruling and prior to the expiration of the responsive pleading period, which IMI claims did not give it an adequate opportunity to respond; (2) we misapplied the holding and reasoning in the decisions cited by IMI and Ohio Casualty; (3) new judicial authority in factually analogous cases supports IMI's contention that only a single occurrence took place; and (4) the practical effects and public policy implications of our determination necessitate reconsideration.

None of these arguments justify reconsideration; they are nothing more than a rehash of the prior analysis by the court in our previous ruling.

IMI's contention that it was denied the opportunity to rebut Ohio Casualty's notice of supplemental authority (which cited <u>Appalachian Ins. Co. v. General Electric Co.</u>, 863 N.E.2d 994 (N.Y. Feb. 15, 2007)), on which IMI claims our ruling regarding the number of occurrences is based, because the notice was filed only nine days before our entry was docketed, is unavailing.  As an initial matter, we doubt that the filing of a notice of supplemental authority qualifies as a motion covered by Local Rule 7.1(b), requiring an eighteen day response period.  However, assuming that it does fall within the purview of Rule 7.1(b), IMI was not materially prejudiced by any lack of opportunity to respond.  In our extended discussion of the number-of-occurrences issue, we cited the <u>General Electric</u> holding only twice, and neither citation was central to our holding.  Additionally, the primary proposition for which we cited that case[5] is not a novel one.  <u>See, e.g.</u>, <u>Appalachian Ins. Co. v. Liberty Mutual Ins. Co.</u>, 676 F.2d 56, 61-62 (3d Cir. 1982) ("The general rule is that an occurrence is determined by the cause or causes of the resulting injury. . . . Using this analysis the court asks if there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages.").  Thus, the fact that IMI did not have an opportunity to respond to the notice of

---

[5] We quoted <u>General Electric</u> for the proposition that, in deciding whether losses arise from a single or multiple occurrences, courts consider "whether there is a close temporal and spatial relationship between the incidents giving rise to the injury or loss, and whether the incidents can be viewed as part of the same causal continuum, without intervening agents or factors."  863 N.E.2d at 999.

supplemental authority does not necessitate reconsideration of our ruling based on that principle.

IMI also claims that we misapplied the holdings and reasoning in <u>Michigan Chemical Corp. v. American Home Assurance Co.</u>, 728 F.2d 374 (3d Cir. 1982) and <u>Maurice Pincoffs Co. v. St. Paul Fire & Marine Insurance Co.</u>, 447 F.2d 204 (5th Cir. 1971). In both cases, the respective courts determined that "occurrences" are the events or incidents for which the insured is liable, and, therefore, the number of occurrences depends upon the number of shipments of the defective product that were made by the insured. In <u>Maurice Pincoffs</u>, it was determined that there were multiple occurrences because the insured sold the defective product to eight different distributors, who in turn, sold it to customers, while in <u>Michigan Chemical</u>, there was only a single occurrence because the defective product was sold to a single distributor before being passed on to the ultimate consumer.

IMI contends that the material difference between the facts in the above cases and the facts in our case is that the insureds in <u>Michigan Chemical</u> and <u>Maurice Pincoffs</u> were the original *suppliers* of the faulty product in the "chain of sale" (or, in other words, were in the same position as Hanson in this case), while the insured here (IMI) is the *middleman* who merely incorporated the faulty product into its own product before selling to other consumers. IMI contends that the dealings of the initial supplier of the faulty product must be examined in determining the number of occurrences. Therefore, because IMI obtained all of the defective aggregate (which ultimately caused the resulting

6

property damage) from a single contract with a single source (Hanson), IMI claims that only this one occurrence is at issue here.

As we made clear in our prior entry, "[i]n determining the number of 'occurrences,' courts look to *the event for which the insured is liable*, not to some other point or factor in the causal chain." Entry at 44 (March 30, 2007) (emphasis added) (citing <u>Dicola v. American S.S. Owners Mut. Protection & Indem. Assoc.</u>, 158 F.3d 65, 80 (2d Cir. 1998)). In other words, we held that an "occurrence" is the act that gives rise to the insured's liability. In <u>Michigan Chemical</u> and <u>Maurice Pincoffs</u>, those respective courts determined that liability did not arise until the faulty product left the insured's control (i.e., was sold); thus the number of occurrences was dependent upon the number of sales the insured made. Here, IMI is the insured. IMI's liability did not arise when it purchased the defective aggregate from Hanson; it arose only when IMI mixed varying amounts of the defective aggregate into numerous batches of concrete and, per multiple contracts with multiple customers, sold that concrete, giving rise to multiple occurrences.

In any event, IMI had ample opportunity in its summary judgment briefing to distinguish these cases and advance its arguments. After careful analysis of both parties' arguments at the summary judgment stage, we devoted a significant portion of our opinion to explaining our reasoning and interpretation of the relevant caselaw, including these two cases. It is unclear why IMI thinks we would, or should, rule any differently the second time around.

Additionally, IMI contends that new judicial authority supports its motion for

7

reconsideration, relying heavily upon Parker Hannifin Corp. v. Steadfast Insurance Co., 445 F. Supp. 2d 827 (N.D. Ohio 2006), which held that the sale of faulty gaskets to a single customer, over time, constituted a single occurrence. First, we note that Parker is a 2006 decision, which suggests that IMI had every opportunity to bring this case to the Court's attention before we issued our March 30, 2007, ruling. In any event, the facts essential to the finding of a single occurrence in Parker are not analogous to the facts before us. Our determination with respect to multiple occurrences rests on the fact that the insured had multiple sales contracts for various formulations of concrete with multiple customers.[6] In contrast, in Parker, although the insured made multiple deliveries of the faulty gaskets, all of those deliveries were controlled by a single sales contract with a single customer, Zenith. Thus, IMI's reliance on Parker in support of its motion to reconsider is misplaced, as the facts in Parker are readily distinguishable from the instant facts.

      The remaining "new" judicial authorities relied upon by IMI are Associated Indemnity Corporation v. Dow Chemical Company, 814 F. Supp. 613 (E.D. Mich. 1993) and Gregory v. The Home Insurance Company, 876 F.2d 602 (7th Cir. 1989), but it is obvious that neither of these cases is "new." IMI had every opportunity to cite both Associated Indemnity, a 1993 decision, and Gregory, a 1989 decision, in its summary

---

[6] IMI rejoins that the number of contracts or sales should not be determinative because, as it argued with reference to Michigan Chemical and Maurice Pincoffs, IMI occupied a different position in the "chain of sale" than Parker did. Pl.'s Reply at 16. However, we dealt with IMI's argument in our discussion *infra*, and shall not reiterate it here.

judgment briefing, but for whatever reason failed to do so.  That failure does not justify reconsideration of our prior ruling.  IMI has failed to demonstrate that the above cited cases were, in fact, "newly discovered" or unknown to IMI until after our March 30, 2007, ruling.

Finally, IMI contends that the adverse effects of our prior decision on IMI suffice to require reconsider of it.  Not so, we say.  In reaching our determination regarding the number of occurrences at issue, we took into account the practical effects and public policy implications associated with both alternatives (single occurrence versus multiple occurrences) and the resultant calculation.  Having previously considered whether an unwarranted, unfair burden would result for either party, we again wonder why IMI believes we would, or should, reconsider that determination.  No judicial error has been cited in this request for reconsideration, merely disagreement, and that does not justify any further expenditure of  time or effort to revisit theories that were thoroughly considered and rejected during summary judgment.  Thus, we <u>DENY</u> Plaintiff's motion for reconsideration related to number of occurrences.

**II.    Method of Allocation**

IMI also requests that we reconsider our March 30, 2007, entry on the issue of the proper rule of allocation, and reverse our conclusion to find that the joint and several, or "all sums," method of allocation, as applied by the Indiana Supreme Court in <u>Allstate</u>

Insurance Co. v. Dana Corp., 759 N.E.2d 1049 (Ind. 2001) ("Dana II"),[7] is applicable here. In the alternative, IMI requests that we certify this question to the Indiana Supreme Court or certify the ruling for immediate appeal to the Seventh Circuit Court of Appeals. IMI's motion is premised on the following arguments: (1) new authority from Indiana supports its position; (2) we limited our interpretation of Ohio Casualty's policy to two words in the coverage grant, rather than looking at the policy as a whole; and (3) Ohio Casualty's policies contain the same ambiguities that prompted the Indiana Supreme Court to apply the joint and several method of allocation in previous cases, regardless of the number of occurrences at issue.

> The section of the Defendants' insurance policies at issue here provides:
>
> We will pay on behalf of the "Insured" *those sums* in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of . . . "property damage," . . . *that takes place during the Policy Period* and is caused by an "occurrence" happening anywhere.

---

[7] The relevant portion of Dana II provides:

There is no language in the coverage grant, including the definitions of "property damage," "personal injury," or "occurrence," that limits Allstate's responsibility to indemnification for liability derived solely for that portion of damages taking place within the policy period. By the policy's terms, once an accident or event resulting in Dana's liability–an occurrence–takes place within the policy period, Allstate must indemnify Dana for "all sums" Dana must pay as a result of that occurrence, subject to the policy limits. We agree with the Court of Appeals that whether or not the damaging effects of an occurrence continue beyond the end of the policy period, if coverage is triggered by an occurrence, it is triggered for "all sums" related to that occurrence.

Dana II at 1058.

(emphasis added). In our March 30, 2007, entry, we distinguished Dana II on the basis that:

> Ohio Casualty's and American National's insurance contracts are more narrowly drawn than Allstate's contract in Dana II, providing coverage only for those sums in excess of the Underlying Insurance that IMI becomes legally obligated to pay because of covered (i.e. collateral) "property damage" that occurred during the applicable Policy Periods (i.e., between September 1, 1999, and September 1, 2001) and was caused by an "occurrence."

Entry at 52.

In support of its motion for reconsideration, IMI relies heavily upon the Lake Superior Court's recent decision in State Farm Fire & Casualty v. Anthony J. Cefali, Cause No. 45D04-0507-PL-00030 (Jan. 25, 2007), which held that the term, "those sums," is indistinguishable from "all sums" and thus ruled that the joint and several rule of allocation, rather than a pro-rata allocation, was applicable to the insurance contract in issue.[8] IMI argues that we should reconsider our prior determination in light of the Lake Superior Court's holding that the joint and several rule of allocation was applicable, despite the fact that, as in Defendants' insurance policies at issue here, the contract in Cefali used the term "those sums," rather than "all sums."

Initially, we are not persuaded (nor are we convinced that the Indiana Supreme Court would be persuaded) by the reasoning giving rise to the Lake Superior Court's

---

[8] The insurance contract at issue in Cefali provided in relevant part that: "We will pay *those sums* that the insured becomes legally obligated to pay as damages because of bodily injury, property damage . . . to which this insurance applies . . . ." (emphasis added).

11

determination that "all sums" is the same as "those sums." More importantly, however, IMI seems to believe that in our prior entry we distinguished <u>Dana II</u> on the sole basis that the Ohio Casualty policies contain the term, "those sums," while the contract at issue in <u>Dana II</u> used "all sums." This is simply not the case. Our analysis primarily focused on the fact that the policy at issue here, unlike that in <u>Dana II</u>, clearly limits coverage only to "those sums" in excess of the Underlying Limit that the insured becomes legally obligated to pay as damages because of "property damage" *that occurs during the Policy Period*. Neither the contract at issue in <u>Dana II</u> nor the contract at issue in <u>Cefali</u> contained a similar qualification. Thus, the <u>Cefali</u> decision does not expand <u>Dana II</u>; it merely applies the holding of <u>Dana II</u> to a liability insurance contract that (like the policies at issue in <u>Dana II</u>, but unlike the policies at issue here) does not expressly limit liability coverage to "property damage" occurring within a specified policy period.

In short, IMI has failed to bring to our attention any argument that necessitates reconsideration of our March 30, 2007, entry. Similarly, we perceive no need to certify this question to the Indiana Supreme Court or to certify it for immediate appeal to the Seventh Circuit Court of Appeals, and therefore, decline to do so. For the reasons detailed above, we <u>DENY</u> Plaintiff's motion for reconsideration of the issue of the applicable allocation method.

### III.   Conclusion

As previously noted, because our consideration here did not require evidence

beyond that which is already in the record, we <u>DENY</u> Plaintiff's motion for leave to file additional evidence [Docket No. 616].  Additionally, upon review, we find no manifest error of law or fact in our previous entry on the issues of number of occurrences and the applicable method of allocation.  Thus, we <u>DENY</u> both of Plaintiff's motions to reconsider [Docket Nos. 558 and 560].  We also <u>DENY</u> Plaintiff's request to certify any issues resolved by this court for review by the Indiana Supreme Court or for immediate appeal to the Seventh Circuit Court of Appeals.

IT IS SO ORDERED.

Date:  03/10/2008  _____

*[signature]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:
Gordon Dale Arnold
FREUND FREEZE & ARNOLD
garnold@ffalaw.com

Michael E. Brown
KIGHTLINGER & GRAY
mbrown@k-glaw.com

Janet Ruth Davis
MECKLER BULGER & TILSON
janet.davis@mbtlaw.com

Neil Frank Freund
FREUND FREEZE & ARNOLD
nfreund@ffalaw.com

James J. Hickey
MECKLER BULGER & TILSON

james.hickey@mbtlaw.com

Brent W. Huber
ICE MILLER LLP
brent.huber@icemiller.com

Lindsay Noelle Marsico
FREUND FREEZE & ARNOLD
lmarsico@ffalaw.com

Eileen P. H. Moore
ICE MILLER LLP
eileen.moore@icemiller.com

Steven D. Pearson
MECKLER BULGER & TILSON
steve.pearson@mbtlaw.com

Stephen J. Peters
HARRISON & MOBERLY
speters@h-mlaw.com

Ginny L. Peterson
KIGHTLINGER & GRAY
gpeterson@k-glaw.com

Rabeh M. A. Soofi
ICE MILLER LLP
rabeh.soofi@icemiller.com

Steven Edward Springer
KIGHTLINGER & GRAY
sspringer@k-glaw.com

Wayne Everett Waite
FREUND FREEZE & ARNOLD
wwaite@ffalaw.com

Robert W. Wright
DEAN-WEBSTER & WRIGHT LLP
rwright@dwwlegal.com

Michael A. Wukmer
ICE MILLER LLP
michael.wukmer@icemiller.com

Robert Wyn Young
FREUND FREEZE & ARNOLD
ryoung@ffalaw.com